v. Southern-Owners Insurance Company. Good morning. Good morning, Your Honor. May it please the Court, Your Honor, Michael Orr on behalf of Southern-Owners, who asks that this Court reverse the district court's order finding that Southern-Owners had a duty to defend and indemnify catamount as an additional insured under its policy. Your Honor, the district court's order represents the first of its kind where a district court combined allegations in a state court complaint in Florida, allegations that were not pled and incorporated into each other and couldn't have been under Florida law. And the district court rewrote the allegations and stacked inferences to create a world of coverage. No case cited by the district court in its order and certainly not the one relied upon by the district court, the Grissom case from the first DCA in 1992, stand for the proposition that that can be done. And this Court, in all of its opinions, and the Florida Supreme Court in 1977 in Lennox Lickers and the Florida Supreme Court in 2005 in Jones v. FIGA, set forth the standard of the courts having to read the allegations as they are pled against the insurer. That's the critical language, not the allegations as pled against somebody else. The insurance policy at issue is looking at the liability of catamount. I had a question. If they had put in the allegation against Catamount that they were vicariously liable for the acts of Duval, we wouldn't be here, right? Correct. Okay. So what you're saying is these other allegations, let's put aside looking at the second count because I think there's perhaps a duty to defend even without looking at the second count. I know the allegations against Catamount don't mention Duval, okay, but it says you failed to provide warnings of a known dangerous condition. And why would that not be that their failure to provide adequate, let's assume Duval created the condition, which the factual allegations say. I realize in Catamount they don't say vicarious liability, the Catamount count, but why wouldn't failure to warn of the conditions created by Duval right there in that count not be enough for a duty to defend? Yes, Your Honor. And so at Docket 77, which is the third amended complaint filed by Zurich Exhibit 5, is the McMillan complaint. There are actually four counts. The third count is the one against Catamount and the fourth is against Duval. And I think what Your Honor is referring to is . . . I'm looking at count three. As to Catamount, yes ma'am. And so . . . I'm only looking at that, failing to provide reasonable and adequate warnings. Yes, Your Honor. It doesn't mention Duval. It says of a known condition. Correct. Yes, Your Honor. And throughout that count and in that specific paragraph that Your Honor is referencing against Catamount in count three, what the pleader alleges is that the failure to warn was that of Catamount, that Catamount failed to warn of a known condition. And what the district court found is that Duval failed to warn and that could have been . . . actually the district court didn't even make that connection. But what the district court did, Your Honors, the district court said, well, the concrete cutting that's alleged in count four is what caused the debris, which is not what the allegations of the complaint say. So the court first made that inference and then said, well, Catamount's being sued because it was potentially controlling that area and if Duval concrete cutting caused debris, then it could be the same debris that was slipped on and therefore there is a causal connection. No court in Florida ever, and certainly not this court, has ever done such a thing which would violate the pleading standard in Florida and eviscerate the meaning of the policy. There is no allegation in this complaint and certainly not the allegations about Catamount not providing warnings to Mr. McMillan that could be written as Duval didn't provide written warning or any warnings rather to McMillan. I'm not talking about Duval providing warnings. I'm talking about Catamount filing, providing warnings about a known condition. There is a general on the site that their subcontractor may have created. That's the critical issue is that last language. But it still would be related to the work of Duval. Not as pled. Not as pled, Your Honor, because in the count against Catamount, it alleges that Mr. McMillan slipped in a parking lot near an area wall, walking toward a portalette near an area where Catamount was performing construction work and had established a site. And then that same count alleges that Catamount, in fact, created or the condition was known to them for a sufficient amount of time. A fair reading of this complaint simply is such that all four defendants were sued because this individual slipped and fell in an area and didn't know who was controlling it. And so he made alternative allegations against each of the four parties. Well, I understand that you're alleging that the complaint asserts that Catamount should be liable for its own negligence, not vicarious negligence, because that was not part of the case. Correct. However, the contract that your client had with Duval covered liability arising out of your work. And then, again, back at the McMillan complaint, McMillan's complaint indicates in count four that Duval was doing work for Catamount and makes reference to the concrete work and the slurry or I don't remember the exact terminology. But what you're saying, I suppose, is that this liability was strictly Catamount's and we should ignore the broad interpretation that Florida courts have given to the phrase arising out of your work. No, Your Honor. I do believe that the arising out of language is broad and this court should apply it as it has in its other opinions. But critically, the word slurry or concrete slurry appear nowhere in the complaint. I am sorry. And that's, Your Honor, the other thing is the subcontract appears nowhere in the McMillan complaint. It refers to the accumulation of debris. Correct. And from previously begun concrete cutting work established at the construction site. And that's part of the problem with this appeal, Your Honor. What Your Honor just read is what Zurich placed in its motion for summary judgment found at docket 88 and what the district court found in its orders on pages 5, 23, 30 and 31. And now what Zurich is again saying in the answer brief. But it's not what the McMillan complaint says. A plain reading of the paragraphs don't show that. And for those reasons, this court should reverse on the due to defend issue. This court should also look to the indemnity issue and follow Judge Marcus's order in the Highland Holdings case where Judge Marcus in that last paragraph of that opinion on seeking coverage has the duty to, the burden rather, to prove that the settlement was covered under the policy. In other words, the only record evidence we have in this case is that Zurich paid $275,000 to settle the catamount. But there is no settlement agreement. They repeatedly stated both in the stipulation, the pretrial stip found at docket 107 and in their motion for summary judgment that they would file it for an in-camera inspection with the court. But they never did. And so the district judge didn't have any evidence. And in Judge Marcus's opinion from Highland Holdings, he even had the settlement agreement in that case. But as Judge Marcus said, you didn't separate out in a portion for the district judge which portion was covered and which portion was not covered. And that's absolutely critical. And the law is from this court that you have to do that. And so without having the settlement agreement and without having any other evidence to apportion, the court's only finding at the end of its order starting on page 45 is that because southern owners fail to defend, they're liable for the damages that flow naturally there from that breach and therefore have to pay. But those line of cases that talk about breaching a duty to defend and then being liable for the damages all relate to the defense cost, not an indemnity settlement. And Judge Marcus has made that clear. Okay. Let me ask you another question. I know if they pled vicarious liability, that would be one thing. But let's look at paragraph 28 which Judge Wright was talking about. While on the premises, McMillan slipped and fell due to the accumulation of debris, as he walked across the parking lot, then later on they refer to accumulation of debris on the outside walkways was a defectively dangerous condition. Even if there was no vicarious liability based on the accumulation of the debris, why is there not failure to warn when you look at the complaint, we know that the accumulation of debris was from the concrete. You're saying if they put in due to an accumulation of debris by Duvall there, they just missed by Duvall. Would that be enough if they put by Duvall there and they failed to warn? If they put those two words, no vicarious liability, failure to warn case, your control of the site, your sub did this. So if they just put those two words there, would that have been enough? That would. And the other thing that would have been enough, Your Honor, is, and I want to correct one the fact that the debris was not caused by the concrete cutting. Nowhere in the complaint does it say that. That's an inference the district court made and that inference is made in the allegations against Duvall. If you look only at the allegations against Catamount, which this court is required to do under Florida law and its own opinions, those allegations . . . I don't know that we're required to be stupid. We read this whole complaint. I understand we've got to look mainly at what they're arguing here. Yes, Your Honor. But it's pretty clear when it's a failure to warn, they don't say Catamount accumulated the debris, do they? No, they don't say. I mean, Catamount, you did this debris. You left it there. That's not the theory of the Catamount count, right? May I respond, Your Honor? I see that I'm out of time. Yes, sure. Yes, right. The theory of the complaint against Catamount is that they did cause it. That's expressly what is alleged in count three, that Catamount caused the debris or it was known to them, not that Duvall caused it. For those reasons, this court should reverse. Okay. Thank you, counsel. Good morning. Good morning. May it please the court. My name is Dale Dobular, and I have the pleasure this morning of representing Zurich American Insurance Company. I'm joined by my colleague, Douglas McIntosh, and we'll be dividing the oral argument up this morning between us with the court's permission. I plan to take approximately eight minutes, and Mr. McIntosh should take about seven minutes. I'll be addressing primarily the duty to defend, and Mr. McIntosh, the duty to indemnify since those two issues are before the court. I'm not going to waste the court's time reciting the facts here. I think the facts are well known to all the parties and are not in dispute. The complaint says what it says. What I will say is that this case and these issues are governed by very well settled and completely uncontroversial principles of Florida law on, one, the duty to defend and how it's interpreted under Florida law, what triggers the duty to defend in a complaint, and, three, the scope of the particular additional insured endorsement that's at issue in this case, which does not involve allegations of vicarious liability, and I'll talk a little bit more about that in a minute. Not only did the district court's order apply the correct analysis, was very well supported by the record, but Southern Owners has claimed in this appeal that somehow the district court has created a seismic shift in insurance coverage law that's going to open the floodgates and that any time after this opinion that a named insured and an additional insured are sued in the same complaint, there's automatic... Let's not waste your time on all that. We don't pay attention to that. We go to the language of the complaint. Can you go to the language of the complaint and tell me why under Florida law we look at the four corners of the complaint, the four corners of the policy, why is it not clear that what they're alleging against Catamount is its own negligence? That's what they do in count four, negligence of Catamount, right? Yes, Your Honor. That's correct. It does nothing, no reference to vicarious liability? It does not mention vicarious liability, but... No reference to Duvall? No, Your Honor. Okay. So how do you get that as a duty to defend that count? We're not talking about the whole case, we're talking about that count against Catamount. I will explain, Your Honor. All right, walk me through that. Well, this was one of the issues that was argued below, which was that in order for there to be... Forget about that. Just tell me right now, how do I say this count against Catamount? We know arising out of it's clear, it's broad. How do I get that they have to defend this? Because Your Honor, first of all, we believe that Florida law requires a court to look at the entire complaint. And we believe that Southern Owners is incorrect. All right, so you agree you have to look at count four or the whole complaint for you to prevail. That's number one. Not necessarily, because the additional insured endorsement that we're dealing with does apply the arises out of language, which is construed very broadly. And the way that that is interpreted is that there doesn't need to be vicarious liability. The test is, is the complaint taken as a whole show that there is some potential that the liability faced by Catamount was in some way connected with Duvall's work? Now remember, the procedural history in this case, Duvall was not brought in until this third version of the complaint. And as counsel pointed out, these counts are substantially similar. They all allege very similar things against Catamount and the other parties. It was not until the count was added against Duvall that we finally got an explanation. We knew that there was debris of some kind. We knew there was a slip and fall. We're dealing with one injury, one cause. How do we get that count three arises out of the work of Duvall without looking at count four? Tell me how in count three. It's fine. Maybe we should look at count four. That's what I'm trying to understand. How do we get in count three by itself that the claim in count three arises out of the work of Duvall when Duvall is not mentioned there? I don't think it has to be vicarious liability. I think it could just be accumulation of debris by Duvall. Well, I would point the Court's attention to paragraph 31 that alleges that Catamount by themselves or through their respective agents, employees or servants acting within the course of their employment created this condition. That certainly opens the door to consider that you had a subcontractor involved on this project that would have been deemed an agent or a servant of Catamount. I think that potentially opens the door. But again, Your Honor, our position is that you do have to consider all the allegations and the complaint because of the standard that's applied under this type of additional insured endorsement. I mean, think about it this way. Here's an analogy that I would offer the Court. Let's say you have a two-count complaint for a premises liability case. You have a property owner, the landlord, and then you have a tenant who runs a bar. There's a shooting and a death, negligent security case. The landlord is sued because they have strict liability or they own the property. But the tenant is sued because they didn't provide proper security, they didn't screen people coming in. Tell me what part of the case you want me to look at because of this type of endorsement you look at the whole complaint. What is the best part of the case you want me to read on that? Well, I will tell you. We all cite so many. So, what's your best one? Well, the best one that we found, Your Honor, is the case that's an unpublished district court case in the Middle District that we filed a supplemental authority. That is the Evanston case that we provided to the Court. And what Florida case? I know that may be applying Florida law. Your Honor, I think that what we can offer only are a multitude of cases that stand for the general proposition that you consider the complaint as a whole. I don't know that there is a Florida case that is directly on point that says that in this specific circumstance that you consider allegations from one defendant to another defendant other than the Evanston case. But it really is a matter of, in our view, common sense and application of the principles that govern the case. And do they have a case that says when you're doing duty to defend, you only look at the count against the catamount? No, that's not correct, Your Honor. There's no Florida case saying that? No, Your Honor. We're not aware of one. So your argument, in a nutshell, is you've got to look at all of the counts and read them together? All the allegations of the complaint, yes, Your Honor, have to be read together because the standards... Fell within count three or count four is less significant. What is more significant is that if you read them in pari materia, there's enough, even if it's ambiguous. There certainly is, because the duty to defend is construed so broadly, and if there's any uncertainty with respect to whether the duty is triggered or not, it has to be weighed in favor of coverage and in favor of a defense. That's the situation that we're faced with. I think the very fact that we're able to stand here today and have some intellectual debate about whether or not there is a duty triggered based on the various allegations in the counts shows that there was an uncertainty that would have required Southern owners to defend here. We think that is absolutely clear, and the cases that they provided saying that you can't do this simply provide no guidance to this Court. The Selective Insurance Company case that was cited by Southern owners doesn't apply to this situation. In that situation, the Court had to consider whether a duty to defend would be triggered by a count that was never pled. That's not our situation. We do have a negligence count pled against Catamount. Again, when Duval was added, we had for the first time an explanation, not that it's dispositive, but we had an explanation that was lacking in this pleading prior to that amendment that finally explained where the accumulation of debris may have come from, Duval's concrete cutting work. Under Florida law, based on this additional endorsement, which every court that has looked at it has said arising out of does not require a direct connection. It doesn't require a finding of proximate cause. The District Court didn't have to find that Catamount's liability was conclusively caused by Duval. That wasn't the test. The test was, is a fair reading of the entire complaint show that there was a possibility that Catamount was being sued in some way connected with Duval's work? I don't see respectfully how there could be any reading of this complaint in which you wouldn't reach that conclusion. Thank you, Counsel. Good morning, Your Honors. May it please the Court, I'm Douglas McIntosh, and I wish to address the duty to indemnify findings below by the U.S. District Court. There's no question, of course, the duty to indemnify is narrower than the duty to defend. Both briefs and parties agree on that. Southern Honors urges here that there's no record evidence from which the Court could have concluded that the duty to indemnify existed in this case, and that just . . . I think there's evidence you could say existed, but the question is what is the extent that they have to pay? I'm troubled by the fact that all we have is the $275,000 check. Okay, I can address that. The hardest issue in this case for me is not the duty to defend or that you've got a duty to indemnify, but even if you've got a duty to indemnify every case I've ever had, you have some evidence. Some people come in and they write a settlement agreement so it will be mostly on Duvall's work or Catamount's work, you know, you kind of make it so it covers. We have nothing in this case on the settlement agreement rights, not in the record, right? You have in the record of the . . . Simple question. . . . bill analysis. Do you have the settlement agreement in the record? No, the settlement agreement, no. The amount paid, yes. That's all we've got is a check for the amount paid. We have no evidence that settlement agreement should at least be considered on the duty to indemnify. It doesn't matter for this reason, Judge. Southern owners breached its duty to defend. When it breaches its duty to defend under Florida law, it suffers the perils of its lack of living up to that obligation to its insured. In this instance, the settled case, what the court must look to is the extant facts that existed at the time the settlement was made. Suppose the settlement agreement says we disclaim any liability of . . . I mean, I don't know what it says. I don't want to speculate. With all respect, that doesn't matter, Your Honor, because that would become borderline collusive when you start drawing settlement agreements to try to get your coverage in place. That's why the court in this instance will not look at that. The court looks at what were the extant facts known to Catamount, to Zurich, to Duvall and to Southern owners at the time the settlements were made at the mediation of this case. We don't know what the facts are because there was no trial or anything. I mean, you don't know. You just look at the facts in the complaint. What do you look at? No, we're beyond that in this case. What facts? What are the extant facts I look at? I'll take you to every one of them. The record below showed that we know that Catamount was the general contractor on the subcontract agreement. And we know that from what? From the complaint as well as from the subcontract agreement. You can look at the subcontract agreement. What's in this record other than the subcontract agreement, the policy and the general contract? The third amended complaint, the general contractor's contract. There's no evidence here other than the contract documents in the complaint. Is that correct? As far as the role and the relationship, general contractor, subcontractor, that's correct. Duval was there to cut concrete. Duval agreed. But where do we just know that from the contract? We know it also from the allegations in the complaint. How do we know the debris the gentleman slipped on was not Catamount's debris? Because in the complaint in paragraph 37, it specifically says the same debris that The first count against Catamount says debris, accumulation of debris. But that's in count four against Duval. If I can finish. Count three says accumulation of debris at the construction site started by Catamount. Count four says same accumulation of debris at the site where Duval was performing concrete cutting work and had begun performing concrete cutting work. The nexus is there in the complaint that the subcontractor's work is what caused the accumulation of debris, which both entities can be legally responsible for. The contractor How do we know it's not Catamount's debris since they allege it was Catamount's debris too? They only allege that Catamount allowed an accumulation of debris on its construction site. It doesn't say Catamount or any of its agents specifically did that and there's no evidence to that effect. The only evidence in the case that was extant at the time is Southern owners did the concrete work. We also have photographs that were produced and that were sent with our tender letters, which this Court can consider on the duty to identify, which show that the gentleman complained of concrete slurry all over his uniform. Are those letters in the record? Yes, ma'am. Yes, they are, Your Honor. They were in the record because of? Because of the tender letter that Zurek sent, the third tender by Michelle Mecca, the MCU claims handler. She attached and referenced the photographs and told Southern owners, you have liability here because this arises out of your insured's work. Here's why. The plaintiff has now said he slipped in concrete slurry and, Judge Wright, that's where the concrete slurry comes from, is that part of the record. Not in the complaint, though. I was thinking I saw it in the complaint. That's right. It's in the tender letter that was sent, the third tender. Also, we have in the contract, Duval is responsible for operating, maintaining and cleaning its work site. We also know that from paragraph 19, Duval was required to identify Catamount for any claims arising out of its work. You have in this case the nexus that is required for the duty to identify to have been activated and the lower court decision . . . Why does this record not create fact issues about the apportionment of the fault here? For the simple reason, twofold, Your Honor. Why is it a matter of law? We know every part of this was by Duval. Why is there not a fact issue? Because there's no question that Catamount's liability arose out of Duval's work. There's no question about that in this record. It was Duval's concrete cutting work that caused the debris which caused this gentleman to fall, number one. Number two . . . Well, even if it was their debris, their allegations about . . . and the general has control of the site. As I understand it, on the day of the fall, Duval had been taken off the site, the record shows this. That Duval was off the site because of the weather and only Catamount had control of the site. Now, maybe I'm wrong about that. No, no. You're right about that. That's where Southern Owners got sideways because their adjuster said this was a completed operation and we were no longer there. Well, forget about that. I'm talking about . . . That's wrong. I'm only talking about apportionment of fault as to the injury of Mr. McMillan. And why is there not a factual issue on that question by virtue of the fact that Catamount had removed Duval from the site on the day, had no warning and allowed him to come across this site where they were in control, your client was in control of the site, right, on the day in question? That is correct. Duval was not even there, much less in control, correct? That is correct. And we know those facts. So there are separate allegations of negligence by your client of failing to warn of the problem and not maintaining a proper site, correct? That is the allegation. So why isn't there a factual issue as to the apportionment of the fault as to Mr. McMillan's slip and fall? Because of two reasons. Number one, Southern Owners has acknowledged that it has coverage for Catamount in this It paid money and put them on a release. It has acknowledged it has coverage. Not only that, there is coverage for Catamount under its policy because of the broad arising out of language. They chose the ISO form that they chose, arising out of. If they had chosen caused by or caused in whole or part by other ISO forms that are in the industry, then you may have a valid point there. But once it is determined that this arose out of their work, we are insured. And anything that we settle for, when they abandon us on the duty to defend, they have to pay. You are insured even if you fail to warn, even if you fail to control the site because it arose out of the debris they put on the site. That is correct and we are owed indemnity. All of that goes back to we have to know as a matter of law, the only record evidence is that it was devolved debris. That is the only record evidence. There is no other explanation. But you would agree we have to know that undisputedly from the record. I believe that it is known undisputedly from the record. You have answered my question. Thank you. Thank you very much, Your Honor. Thank you, Your Honor, for your time. Thank you. Mr. Orr, you have four minutes for rebuttal. May it please the Court, I am going to address now. The Evanson case is a good opinion by Judge Dalton who did a lot of personal injury and other types of work like this. He says we can't turn a blind eye to the factual allegations. Why is Judge Dalton wrong in Evanson? He cites a Florida law. He says you can look at the other part of the complaint. Judge Dalton is absolutely correct except in the unpublished opinion from 2017 that we received two days ago that has never been cited before by anybody on this appeal. There were 48 footnotes. On footnote 22, Judge Dalton indicated in his opinion that he was relying expressly on the allegations from that underlying complaint. If the Court looks to that opinion from Judge Dalton, Judge Dalton says specifically that he is relying on allegations 10, 12, 13 from the underlying complaint which were general allegations about the subcontractor's work that were incorporated into the allegations against the additional insurer which is the entire argument on this appeal. In your honor, in your own opinion, Judge Hull, in the selective case, your honor said on page 866 of that opinion, the duty to defend depends solely on the facts and legal theories alleged in the pleadings and claims against the insured. Your honor cited the lawyer's title case and in that case, in that written line I just read is the line that the Florida Supreme Court has employed time and time again. You analyze the facts against the insured and there is no opinion, certainly not this last minute unpublished district court opinion from Judge Dalton where he relied on general allegations that were incorporated into the specific count against the additional insured. No case anywhere that finds that a court can look to allegations against another party that were not pled into the count against the party being analyzed in this instance the additional insured. Your honors, the statement was just made to this court on the indemnity issue that the complaint did not allege that Catamount had anything to do with the debris and didn't cause the debris. That was the statement to this court. Paragraph 30 of the second amended complaint, McMillan, which is found at page 72 of 250 in the record, this is for docket 88, reads, and this is the paragraph in the count against Catamount, the accumulation of debris on the outside walkways was a defectively dangerous condition and or the causes and or origins thereof were created by and or known to defendant Catamount. Nowhere does it allege in that count that Duvall created anything. It doesn't mention it. It's not connected to Duvall's work. It's not incidental to Duvall's work. And no case allows Zurich to make the argument that they're making on appeal as to the duty to defend. And on the duty to indemnify, Judge Hull asked the question repeatedly and the only answer that could be provided to this court, aside from the actual check, about what evidence, record evidence is there from the underlying State court case that this settlement payment had anything to do with liability arising out of Duvall's work, they pointed to Zurich's own tender letter. That's their allegations. Zurich is the party in this case and Zurich's claims representative wrote a letter alleging what she believed it was that caused the debris. And even in that instance in the letter, which they cite on page 26 of their answer brief, Your Honors, they cite that passage from their own tender letter. They don't even attach the photos. The photos aren't in the record attached to that letter. So there is absolutely no evidence and under Judge Marcus's opinion and Hyland Hulling's, this court should reverse. Thank you. Thank you very much. Thank you all. This court will be adjourned. Thank you. Okay. Thanks very much. And just bring them into the conference room. Can you come help me? Just take these. Can you help me with my school book? Good seeing you. Thank you again for everything. Should we throw these out? Okay. Thank you very much. Thank you for everything. Thank you. Thank you.